UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| EYMARDE LAWLER, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Case No.: 12-1299 |
| ) | |
| PEORIA SCHOOL DISTRICT NO. 150, ) | |
| An Illinois Local Governmental Entity, ) | |
| ) | |
| Defendant. ) | |

### O R D E R AND OPINION

Defendant, Peoria School District No. 150 ("District 150") has moved for summary judgment [55]. The parties have fully briefed the Motion and Response. For the reasons set forth below, Defendant's Motion for Summary Judgment [55] is GRANTED.

### STATEMENT OF FACTS

Eymarde Lawler ("Lawler") began working as a teacher in District 150 in 1999. Lawler received a Learning Behavioral Specialist 1 license from the State of Illinois, which allowed her to teach special education students. The job description for District 150 included: creating a classroom and school environment that is conducive to learning and appropriate to the maturity and interests of students; assuming responsibility for the safety and well-being of students under their supervision; maintaining order in the classroom in a fair and just manner; maintaining and improving professional competence; and reporting to work for the 180-day teacher working year. See Docket Entry 56 ¶ 3.

Lawler worked part-time through 2003. In August 2005, District 150 hired Lawler as a full-time special education teacher and assigned her to the White Middle School. Lawler was then transferred to the Kingman Primary School where she taught from 2006-2009. Annette

Johnson evaluated Lawler during the 2006-2007 school year. Lawler received a satisfactory rating; however, the review stated, "Mrs. Lawler would benefit from handling confidential information and difficult situations more tactfully in accordance with district policies and practices." See Docket Entry 57-2. Johnson evaluated Lawler during the 2007-2008 school year. Lawler received a satisfactory performance review that highlighted some of her improvements. The review also stated, "Ms. Lawler would benefit from handling confidential information and difficult situations with her students and colleagues more tactfully in accordance with district policies and practices." See Docket Entry 57-3. In 2008-2009, Lawler received a satisfactory rating. Johnson noted in Lawler's evaluation that Lawler was "showing growth by making necessary changes in how she deals with her colleagues, students, and families and is developing a professional work ethic." See Docket Entry 57-4.

District 150 transferred Lawler to the Roosevelt Magnet School for the 2009-2010 school year. Magnolia Branscumb, Principal of Roosevelt Magnet School, evaluated Lawler during the 2009-2010 school year. Lawler received a satisfactory performance; however, it was given with serious reservations. Specifically, the review noted that Lawler failed to: "Work cooperatively with colleagues and contribute to the learning community; Handle confidential information and difficult situations tactfully; Be punctual to job assignments and meetings; Create a well-organized, planned environment for learning; Provide appropriate materials that engage the student in the learning activity; Create a caring inclusive, and challenging classroom; Begin class work promptly; Minimize management and transition time; Follow the general procedures and protocols of the school and of the district in a timely manner." See Docket Entry 57-5.

In May 2010, after receiving her evaluation, Lawler provided District 150 with a note from her psychologist, Dr. Steven Hamon who indicated he was treating Lawler for PTSD. The letter stated in part that "a conflictual situation has arisen chiefly with the school principal, but

all with other faculty members." See Docket Entry 57-6.  Dr. Hamon recommended that Lawler be given a leave of absence for the remainder of the 2009-2010 school year, be transferred to another school, and not be reassigned to teach in the same school as the current Roosevelt Principal. District 150 placed Lawler on leave for the remainder of the 2009-2010 academic year and transferred her to another school the following year.

During the 2010-2011 school year, Lawler worked at the Trewyn School Day Treatment Program. The Day Treatment Program is for students with behavioral and emotional disorders. Lawler was qualified to teach all special education students, including those with behavioral and emotional problems disorders such as those enrolled in the Day Treatment Program, because she has a Learning Behavioral Specialist I certificate.

Mary Camp supervised the Day Treatment Program from 2008 through early October 2011.  Camp was a special education coordinator at Trewyn Day Treatment. When Lawler learned that she was going to be transferred to the Day Treatment Program, she began corresponding with Camp regarding her concerns about transferring because she did not have experience working with students with severe behavioral and emotional disorders.

Camp evaluated Plaintiff during the 2010-2011 school year. Lawler received a satisfactory rating. Lawler's areas of improvement included: "Developing interpersonal skills, perspective taking, timeliness of communicating concerns, and emotional regulation; Skills in the area of classroom management, classroom environment, students being actively engaged, and evidence based  behavior interventions; Summaries, review, and provide closure for all lessons; Vary assessments at end of each lesson; clearly communicate lesson objective; and how you will know students attained the objective; Identify instructional models/strategies in lesson plans and closing assessments." See Docket Entry 60, p. 2.

Lawler returned to the Day Treatment Program at Trewyn for the 2011-2012 school year. In July 2011, Lawler's father passed away unexpectedly and Lawler and her siblings took over the care of their disabled mother. In August 2011, Lawler witnessed the aftermath of a shooting. On September 16, 2011, a student pushed past Lawler causing her to fall backwards and strike her head against the wall. Lawler was injured and removed from the school by ambulance. On September 20, 2011, Plaintiff saw Dr. Hamon to discuss the injury she sustained from her student as well as the emotional stress caused by the passing of her father and witnessing the aftermath of the shooting. Due to her past trauma, Lawler suffered from dissociative identity disorder and Post Traumatic Stress Disorder ("PTSD").

On September 7, 2011, Lawler and a teacher's aide overheard a student telling another student that his father was sexually abusing him. Lawler and the teacher's aide reported this to Camp. Although, both Lawler and the aide were both mandated reporters, Camp told them not report the incident because the student was known to lie. Lawler did not report the incident at that time. Lawler called DCFS and reported the student's statement five weeks later. Lawler later went to Nunn and told her about the incident and that Camp told her not to report it. Nunn suspended Lawler and the aide for failing to report the incident. Lawler also received a Notice to Remedy for her conduct.

On September 21, 2011, Plaintiff met with Teri Dunn, District 150's Director of Human Resources and gave her letter from Dr. Hamon also dated on the twenty-first. The letter stated in part that Lawler's PTSD had been in remission, but had been triggered by the passing of her father, the shooting, and the injury from the student. Dr. Hamon recommended that "Ms. Lawler be granted a two-week Leave of Absence from work in order to recover from the emotional events of her Summer and early Fall, and to gain traction toward remission of her PTSD symptoms" and a "transfer to another special education job in the District that does not involve

4

B.E.D. (Behaviorally-Emotionally Disturbed) students." See Docket Entry 62. During the September 21, 2011 meeting, Dunn gave Lawler a two-week leave of absence through October 6, 2011 but denied Lawler's request for a transfer. There is a dispute as to whether Dunn gave Lawler a reason why the transfer was denied, told Lawler additional information was required to consider a transfer, and provided Lawler with packet of forms and directed her to have her physician complete and return the forms to the Human Resources Department. The District did not receive any additional information from Lawler with regard to her leave or transfer at that time.

On September 23, 2011, two days after meeting with Dunn, Lawler emailed Dunn stating as follows:

> I am feeling so much better. I have actually slept through the night and realized what day it is. I am confident that I will be prepared to return to work on the 6th of Oct. I realize that my request for a transfer is not a guarantee. I am confident that if I return to Day Treatment I will be able to do the job I have been hired to do. Thank you for your support. It means a lot to me."

See Docket Entry 62-2. Dunn interpreted Lawler's email to mean that Lawler was prepared to return to work at the Day Treatment Program on October 6, 2011. On September 29, 2011, Dunn received a letter from Dr. Hamon dated September 28, 2011, which stated Lawler could return to work. The letter did not indicate that Lawler had any work restrictions. Dunn interpreted Dr. Hamon's letter to mean Lawler was released to return back to work without any restrictions. Lawler returned to work on October 5, 2011, one day before her leave was due to expire. At the time of her return there was no medical reason why Lawler could not perform her job at the Day Treatment Program.

On October 5, 2011, Camp approached Lawler about a letter found on a copier machine. The letter was on Order of St. Francis letterhead and signed by a Dr. Henry Gross. The letter stated in part "due to an injury at work on 9/19/2011, Eymarde can no longer participate in the

5

Severe BED Program. Eymarde should transfer out of BED Program due to the injury and into an environment with students with learning disabilities." See Docket 62-4. Camp informed Lawler that she needed to discuss the letter with Camp or Carolyn Nunn, Camp's successor. Plaintiff did not wish to discuss the letter at the time and Plaintiff did not submit the letter to Camp or Nunn. Several days later, Lawler and Nunn met to discuss Dr. Gross' letter. Lawler testified she submitted Dr. Gross' letter to the District to support her need for an additional accommodation, namely, a transfer to out of the Day Treatment program.

On December 6, 2011, Lawler met with Dr. Hamon again and complained of stressors at work. Lawler informed Dr. Hamon that the new principal at Trewyn was focusing on her negative performance issues rather than her classroom successes. Lawler also told Dr. Hamon she was afraid she would lose her job because Dr. Hamon recommended she be transferred.

During the 2011-2012 school year, Nunn evaluated Lawler's performance. Nunn had the requisite qualifications to evaluate Lawler's performance. The District contends that at the time of Lawler's evaluation, which occurred on February 6, 2012, Nunn was not aware that Plaintiff submitted a September 21, 2011 note from Dr. Hamon to Dunn. In addition, Nunn was not aware Lawler had requested a transfer from the Day Treatment Program or that Lawler suffered from PTSD. During the evaluation, Lawler did not discuss Dr. Hamon's September 21, 2011 letter nor did Lawler ask Nunn for a transfer out of the Day Treatment Program.

Nunn gave Lawler an unsatisfactory rating on the evaluation for the following reasons: (1) Plaintiff communicated with others in an unnecessarily abrasive manner; (2) Plaintiff inappropriately interrupted classes for unnecessary reasons; (3) Plaintiff interacted inappropriately with fellow employees; (4) Plaintiff interacted inappropriately with students; (5) Plaintiff failed to appropriately handle confidential information; and (6) Plaintiff admitted to submitting a doctor's note for the sole purpose of obtaining a transfer to a different teaching

position even though she was not suffering from a health issue that affected her ability to teach at the Day Treatment Program. See Docket Entry 62-5.

Lawler refused to sign the performance review because, among other issues, she disagreed with language describing incident involving the letter from Dr. Gross. Nunn agreed to revise the evaluation. The revised evaluation stated Plaintiff attempted to use Dr. Gross for the improper purpose of obtaining the transfer away from Mary Camp. Lawler signed the revised performance evaluation on February 14, 2012. After a teacher receives an unsatisfactory rating, the next step in the evaluation process is a remediation plan, which provides the teacher and evaluator an opportunity to set goals to assist the teacher in reaching a satisfactory performance rating. Lawler was unable to complete a remediation plan because she went on medical leave. Nunn was not aware that Lawler's receipt of an unsatisfactory review would result in her being honorably dismissed at the end of the 2011-2012 school year.

On February 16, 2012, Dr. Hamon noted Lawler was under stress at work because Lawler's colleagues were frustrated with her interpersonal coping attempts. While Lawler felt she was being helpful, her colleagues felt that she was being too nosy.

On February 24, 2012, Lawler submitted a letter from Dr. Hamon to Dunn regarding Lawler's recurring PTSD. In the letter, Dr. Hamon recommended that Lawler be granted a leave of absence for the remainder of the school year and Plaintiff be transferred from the Day Treatment Program to a cross-categorical classroom, which refers to the full spectrum of disabilities of special education students, including B.E.D. students. Based on the information provided by Lawler, the District granted Lawler's leave request through March 30, 2012. The District directed Lawler to have her physician provide additional information concerning her medical condition to substantiate Lawler's need to take leave for the remainder of the 2011-2012 school year. On March 6, 2012, the District received additional medical certification from Dr.

Hamon. On March 9, 2012, the District sent Lawler a letter informing her that she was approved for a leave of absence for the remainder of the school year.

On April 20, 2012, the District received a letter dated March 20, 2012 from Dr. Arun Pinto stating that he was treating Lawler for PTSD. The letter further stated that he recommended that Lawler not be placed in a B.E.D classroom. The District contends they did not take action to transfer Lawler to a different classroom because Lawler was on medical leave for the remainder of the 2011-2012 school year and upon Lawler's return the District would have requested additional information in order to reevaluate Lawler's need for a transfer at that time.

Lawler never returned to the District because she was honorably dismissed at the end of the 2011-2012 school year as a part of a reduction-in-force ("RIF"). Lawler was dismissed pursuant to Section 24-12 of the Illinois School Code because she received an unsatisfactory rating on her performance evaluation, which placed her in Group 2 in the sequence of honorable dismissal. Plaintiff was notified of her honorable dismissal on April 10, 2012.

On August 30, 2012, Plaintiff filed the instant Complaint, amended on December 12, 2012, alleging the District violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* by failing to accommodate her disability and retaliated against her by giving her an unsatisfactory rating on her performance review, which resulted in her honorable dismissal from the District. On September 4, 2012, Lawler filed a complaint in the Circuit Court of Peoria County alleging her dismissal violated the Illinois School Code. On April 25, 2013, the Circuit Court granted summary judgment to the District. Lawler appealed to the Illinois Appellate Court, Third District. The Illinois Appellate Court affirmed. Lawler filed a petition for leave to appeal the Appellate Court decision to the Illinois Supreme Court. On November 26, 2014, the Illinois Supreme Court denied the petition.

## DISCUSSION

**I.    Legal Standard**

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 2552 (1986). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." Id. at 2553. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986); Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1355-56 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. Where a proposed statement of fact is supported by the record and not adequately rebutted, a court will accept that statement as true for purposes of summary judgment; an adequate rebuttal requires a citation to specific support in the record. Drake v. Minnesota Mining & Mfg. Co., 134 F.3d 878, 887 (7th Cir. 1998). Celotex Corp., 106 S. Ct. at 2553. This Court must then determine whether there is a need for trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. Anderson, 106 S. Ct. at 2511; Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995).

9

**II.    ANALYSIS**

The Rehabilitation Act of 1973 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).  When analyzing a claim under the Rehabilitation Act, the Court applies the same standards promulgated in the American with Disabilities Act ("ADA").  See Ozlowski v. Henderson, 237 F.3d 837, 839 (7th Cir. 2001).  To establish a claim under the ADA for failure to accommodate, Lawler must show "(1) she is a 'qualified individual with a disability'; (2) the defendant was aware of her disability; and (3) the defendant failed to reasonably accommodate her disability."  Bunn v. Khoury Enterprises, Inc., 753 F.3d 676, 682; EEOC v. Sears, Roebuck & Co., 417 F.3d 789, 797 (7th Cir. 2005).

Defendant argues it is entitled to summary judgment on Plaintiff's failure to accommodate claim because Plaintiff is not a qualified individual with a disability and the District reasonably accommodated Plaintiff's disability.  Defendant also argues they are entitled summary judgment on Plaintiff's retaliation claim because she fails to establish a *prima facie* case of retaliation through either the direct or indirect method. Lastly, Defendant argues that Plaintiff's federal claims are precluded by the Illinois state court judgment.

**A. Failure to Accommodate**

Failure to accommodate a known disability can constitute discrimination under the ADA, unless doing so would impose an undue hardship on the employer.  42 U.S.C. §§ 12112(a), (b)(5)(A).  To maintain a claim for failure to accommodate, a plaintiff must show that: (1) she is a qualified individual with a disability; (2) her employer was aware of her disability; and (3) her employer failed to reasonably accommodate that disability.  Ekstrand v. School District of Somerset, 583 F.3d 972, 975 (7th Cir. 2009).

Defendant argues they are entitled to judgment as a matter of law because Plaintiff is not a qualified individual under the ADA. To establish that she is a "qualified individual with a disability," Lawler must establish not only that she has a disability within the meaning of the ADA, but also that she is able "to perform the essential functions of the job, with or without reasonable accommodation." 42 U.S.C. § 12111(8); Jackson v. City of Chicago, 414 F.3d 806, 811 (7th Cir. 2005); Gratzl v. Office of the Chief Judges of the 12th, 18th, 19th & 22nd Judicial Circuits, 601 F.3d 674 (7th Cir. 2010).

To determine whether someone is a "qualified individual with a disability," we apply a two-step test. See 29 C.F.R. app. § 1630.2(m). "First, we consider whether 'the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc.'" Basith v. Cook County, 241 F.3d 919, 927 (7th Cir. Ill. 2001) *quoting* Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 563 (7th Cir. 1996) (quoting 29 C.F.R. app. § 1630.2(m)). "If [s]he does, then we must consider 'whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation.'" Id. (quoting same).

Here is it undisputed that Lawler had the educational background and requisite qualifications for the position because she had Bachelor's degree in special education and she was licensed through the State of Illinois to teach special education children. Accordingly, Plaintiff meets the first step of the two-step test.

Although the District agues Plaintiff was not a qualified individual with regards to the transfer because she was unable to perform the functions of any new position she desired because she was absent on medical leave, the Court finds that the undisputed facts show that at the time the Plaintiff made her initial request she was a qualified individual. This is evidenced by the undisputed fact that the District granted one of Plaintiff's requests for accommodation.

11

The Court believes the question of whether or not Plaintiff was entitled to a transfer is better answered when analyzing whether the District reasonably accommodated Lawler's disability, which the Court will now address.

Defendant argues that it reasonably accommodated Plaintiff's disability by granting her medical leave. In response, Plaintiff asserts that the District failed to engage in the interactive process with regards to her request for a transfer, and therefore, a disputed fact exist as to whether the District accommodated her disability. Once an employer becomes aware of an employee's disability, it must make good faith efforts to reach a reasonable accommodation. See Beck v. University of Wisconsin Board of Regents, 75 F.3d 1130, 1135 (7th Cir. 1996); Hendricks-Robinson v. Excel Corp., 154 F.3d 685, 693 (7th Cir. 1998).  That being said, employers are not required to provide the precise accommodation requested by an employee, particularly where the employee's request is not adequately substantiated by medical documentation; the employer is only required to provide an accommodation that is reasonable in terms of costs and benefits.  Mays v. Principi, 301 F.3d 866, 871-72 (7th Cir. 2002); Malabarba v. Chicago Tribune Co., 149 F.3d 690, 699 (7th Cir. 1998) (noting that an employee is not entitled to the best or employee-preferred accommodations, only an accommodation that is reasonable); See Schmidt v. Methodist Hospital, 89 F.3d 342 (7th Cir. 1996); Miranda v. Wisconsin Power & Light Co., 91 F.3d 1011, 1016 (7th Cir. 1996). Based on the undisputed facts, the Court finds that the District is entitled to summary judgment on Plaintiff's failure to accommodate claim.

The record indicates when the District received Dr. Hamon's September 21, 2011 letter recommending Lawler be granted a leave of absence and a transfer, Dunn met with Lawler immediately.  During the meeting, Dunn immediately granted Plaintiff a two-week medical leave, but denied Plaintiff's request for transfer. While there is some dispute as to whether the District denied Lawler's request for transfer for no reason or whether the district needed

12

additional information to process the Lawler's transfer, the Court finds these facts immaterial in light of what transpired thereafter.

It is undisputed Plaintiff went on medical leave on September 21, 2011. Plaintiff was scheduled to be on leave through October 6, 2011. Two days later, on September 23, 2011, Plaintiff sent Dunn an email stating

> I am feeling so much better. I have actually slept through the night and realized what day it is. I am confident that I will be prepared to return to work on the 6th of Oct. I realize that my request for a transfer is not a guarantee. I am confident that if I return to Day Treatment I will be able to do the job I have been hired to do. Thank you for your support. It means a lot to me."

Plaintiff's own statement belies her deposition testimony that the District immediately denied her request for a transfer as Plaintiff acknowledges that her transfer was not guaranteed, which implies that her request, although denied at the time, was still open for discussion. In addition, Plaintiff indicates she is confident that if she returns to the Day Treatment Program she will be able to perform her job, in affect withdrawing her need for a transfer. See Flynn v. Healthcare Servs. Grp., Inc., No. 95 C 6448, 1999 WL 182338, at * 12 (N.D. Ill. Mar. 25, 1999)("if an employer's most recent information is that an employee is not disabled and that information is presented to the employee with no objection, the employer is under no obligation to take action.")

Plaintiff's statement was medically corroborated by her treating physician, Dr. Hamon. In his September 28, 2011 letter, Dr. Hamon stated Plaintiff was able to return to work on October 5, 2011, a day before her leave was scheduled to end. Dr. Hamon's letter made no reference to restrictions or a transfer. Dr. Hamon treated Plaintiff on the same date he wrote the letter and it is undisputed that Dr. Hamon was aware he was returning Plaintiff to work at the Day Treatment Program. Plaintiff later testified in her deposition there was no medical reason why she could not return to her current position

at the Day Treatment Program. See Exh. 1 Lawler Depo. at 91. Plaintiff also testified if Dr. Hamon intended for Plaintiff have to have any medical restrictions he would have included them in the letter. Id.

Plaintiff contends that if the District had any confusion about whether or not she still needed the transfer, it could have spoken to Drs. Gross, Pinto, or Hamon. It is undisputed Dr. Gross wrote a letter dated October 3, 2011 indicating that due to injury at work, Lawler should be transferred out of the BED Program. However, a review of Dr. Gross' treatment records indicate that he was treating Lawler for neck and shoulder pain and recommended the transfer based on an alleged injury Plaintiff sustained at work. The underlying disability in the current case is PTSD. Accordingly, Plaintiff's reliance on Dr. Gross' letter recommending a transfer is misplaced as it has no relation to Plaintiff's PTSD claim. To the extent that Plaintiff wished to assert a failure to accommodate claim against the District for her neck and shoulder pain, she was required to plead that claim in her complaint. See Anderson v. Donahoe, 699 F.3d 989, 997 (7th Cir. 2012)("a plaintiff "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment")(citations omitted).

As to Drs. Hamon and Pinto, on February 24, 2012, Lawler submitted a letter from Dr. Hamon in which he recommended that Lawler be given a leave of absence for the remainder of the school year and that Plaintiff be transferred from the Day Treatment Program to a cross-categorical classroom, which refers to the full spectrum of disabilities of special education students, including B.E.D. students. Based on the information provided by Lawler, the District granted Lawler's leave request through March 30, 2012. After receiving additional information from Dr. Hamon, it is undisputed that on March 9, 2012, the District sent Lawler a letter informing her that she was approved for a leave absence for the remainder of the school year. On April 20, 2012, the District received a letter dated from March 20, 2012 from Dr. Arun Pinto

14

stating that he was treating Lawler for PTSD. The letter further stated that he recommended that Lawler not be placed in a B.E.D classroom. However, Plaintiff's failure to accommodate claim is premised the District's failure to transfer upon her to return to work on October 5, 2011[1]. Accordingly, the letters received in 2012 cannot support Plaintiff's claim that the District failed to accommodate her in October 5, 2011.

Fatal to Plaintiff's claim that the District failed to accommodate is her failure to address her own statements and testimony that she was able to return to work and that there was no medical reason why she could not return to her position at the Day Treatment Program. Plaintiff further ignores the fact that her treating physician, Dr. Hamon, returned her to work to the Day Treatment Program without restrictions. Contrary to Plaintiff's contentions, the undisputed record indicates that the District engaged in the interactive process and accommodated Plaintiff's disability by granting her leave per her doctor's request on September 21, 2011. On September 23, 2011, Plaintiff stated she was able to return to work and on October 5, 2011, her treating physician stated she was able to return to the Day Treatment Program without restriction. The Court finds there is no issue of material fact for a jury to decide. Accordingly, the District is entitled to summary judgment on Plaintiff's failure to accommodate claim.

**B.  ADA Retaliation Claim**

The District argues they are entitled to summary judgment on Plaintiff's retaliation claim because Plaintiff fails to prove under either the direct or indirect methods of proof that the District retaliated against her for asserting her rights under the ADA.

---

[1] In her response, Plaintiff states, "[T]he refusal of District 150 to accommodate Lawler resulted in her having to take a leave of absence from February 2012 through June 2012. District 150 never had to accommodate Lawler for the next school year because her employment was terminated effective in April 2012." Docket Entry No. 69, pp. 38-39.

Under the direct method of proof, Lawler must "present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." Amrhein v. Health Care Serv. Corp., 546 F.3d 854, 858 (7th Cir. 2008). Plaintiff satisfies the first two elements: she made a request for an accommodation for her disability and she received an unsatisfactory performance evaluation that led to her termination. However, Plaintiff's claim fails on the third element.

Plaintiff maintains that because Nunn contacted Dunn about Dr. Gross' October 3, 2011 letter recommending that Plaintiff be transferred from B.E.D. students there is a causal connection between her request for an accommodation to Dunn and her receipt of her unsatisfactory evaluation from Nunn. As stated above, the record reveals that Dr. Gross was treating Plaintiff for neck and shoulder pain, not PTSD, so Plaintiff's reliance on Dr. Gross' October 3, 2011 letter is misplaced. Plaintiff cannot establish a causal connection between her request for a transfer to accommodate her PTSD and an unsatisfactory review that referenced a letter regarding neck and shoulder pain, which is unrelated to the underlying disability at issue in this case. Accordingly, Plaintiff has not established a triable issue of fact on her retaliation claim under the direct method of proof.

To succeed under the indirect method of proof on a retaliation claim, Plaintiff must demonstrate: "(1) that she engaged in protected activity; (2) that she was subject to an adverse employment action; (3) that she was performing her job satisfactorily; and (4) that no similarly situated employee who did not engage in protected activity suffered an adverse employment action." Squibb v. Mem'l Med. Ctr., 497 F.3d 775, 778 (7th Cir. 2007). Defendant concedes that Plaintiff was engaged in protective activity and was subject to an adverse employment action. Plaintiff argues that she was performing her job satisfactorily and Defendant disputes this. Regardless of this dispute, Plaintiff's claim still fails because she presented no evidence

16

that similarly situated individuals who did not engaged in protective activity suffered an adverse employment action. Burks v. Wis. DOT, 464 F.3d 744, 759 (7th Cir. 2006). Therefore, Defendant is entitled to summary judgment on Plaintiff's retaliation. Claims.

### C. Res Judicata

The Court has found that Defendant is entitled to summary judgment on Plaintiff's failure to accommodate and retaliation claims. Accordingly, the Court need not address Defendant's res judicata argument.

## CONCLUSION

For the reasons set forth above, Defendant Peoria School District No. 150's Motion for Summary Judgment [55] is GRANTED. This matter is now terminated, and existing deadlines are vacated.

Entered this 10th day of August, 2015.

/s/ James E. Shadid
James E. Shadid
Chief United States District Judge

17